# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2064

_____

Leland Stauch; Audrey Stauch;    *
Matthew Stauch,                  *
                                 *
        Plaintiffs/Appellees,    *
                                 *  Appeal from the United States
    v.                           *  District Court for the
                                 *  District of Minnesota.
City of Columbia Heights;        *
                                 *
        Defendants/Appellants,   *
                                 *
Patrick Hentges; Charles Kewatt; *
Lowell Demars; Evelyn Nygaard;   *
Gary Gorman; Matthew Field,      *
                                 *
        Defendants.              *

_____

Submitted: February 14, 2000

Filed: May 8, 2000

_____

Before BEAM and JOHN R. GIBSON, Circuit Judges, and PRATT,[1] District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

The City of Columbia Heights, Minnesota (the City) appeals the district court's[2] denial of its motion for judgment as a matter of law or in the alternative for a new trial following an adverse jury verdict. We affirm.

## I.    BACKGROUND

Leland and Audrey Stauch and their son, Matthew Stauch (the Stauches) owned and operated thirty-eight rental units in Columbia Heights. In 1992, twelve of these units failed to pass an inspection performed by the City. The City allowed the Stauches additional time to bring the units into compliance. Meanwhile, in November 1992, the Stauches received renewal forms for the rental licenses on their units for the 1993 year. The Stauches completed and returned these forms, along with the required fees. In May 1993, the City again inspected the Stauches' property and determined that none of the units passed inspection. Those units that had also failed the 1992 inspection were posted with notices stating that they were unlicensed. The tenants living in those units were told to vacate. In July 1993, similar action was taken with the remaining units. The City's official position was that a property must pass inspection before a rental license could be renewed.[3]

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[3]In 1994, the City purchased many of these units from the Stauches. The Stauches allege that the City's actions left them no choice but to sell their units to the City at a price below their fair market value.

The City then charged Leland and Audrey Stauch with the misdemeanor of operating rental units without a license in violation of the City of Columbia Heights Code of Ordinances (the Code). They were convicted. The Minnesota Court of Appeals later overturned the convictions finding that the Stauches had complied with the Code. See State v. Stauch, No. C8-94-189, 1994 WL 454747 (Minn. Ct. App. Aug. 23, 1994). The court rejected the City's argument that a property must pass inspection before a rental license could be renewed. It found that the language in Chapter 5A of the Code dealing with licensing procedures for rental properties clearly required that, although a property must pass inspection before it could be *initially* licensed, license *renewal* was automatic upon a showing of three conditions: (1) return of the renewal form; (2) payment of the registration fee; (3) and inspection of the unit within the previous two years. Id. at *1. The court specifically noted that the Code did not state that a failed inspection invalidates license renewal.[4] Id. at *2.

---

[4]The relevant section of the Code, entitled "License Renewal," provides:

Renewal of the license as required annually by this Code may be made by filling out the required renewal form furnished by the Building Official to the owner, operator or agent of a rental dwelling and by mailing the form together with the required registration fee to the building official. Such renewal or registration may be made only . . . where there has been an inspection within the last two years.

Columbia Heights, Minn., Code of Ordinances, ordinance 1176, ch. 5A, art. IV, § 7, 5A.407(1).

The Stauches then filed this section 1983 suit alleging that the City and individual city officials (defendants) had violated their due process rights by failing to provide notice and opportunity for a hearing before posting their properties as unlicensed and requiring their tenants to vacate. The Stauches also asserted an equal protection claim against defendants claiming that the discriminatory treatment was due in part to the fact that they rented to a high percentage of minorities. The district court granted summary judgment on the due process claims against the individual city officials on the basis of qualified immunity. The action was then tried to a jury. The jury found in favor of the defendants on the equal protection claim but found in favor of the Stauches on the due process claim, and awarded $120,000 in damages. The district court denied the City's post-trial motions for judgment as a matter of law or in the alternative for a new trial. The City appeals.

## II.    DISCUSSION

We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court. See Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir. 1994). The denial of a motion for judgment as a matter of law may be reversed only when the evidence viewed in the light most favorable to the nonmoving party points one way and is susceptible of no reasonable inferences supporting the position of the nonmoving party. See Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992). A review of the denial of a motion for new trial is even more limited in that it is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court abused its discretion. See id.

In a section 1983 suit against a municipality, we must determine two separate issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). We examine each issue in turn.

### A.     The Constitutional Violation

The Stauches assert that the City violated their procedural due process rights as guaranteed by the Fourteenth Amendment because it failed to follow Code requirements requiring notice and an opportunity to be heard before determining that the units were unlicensed and posting them as such. The possession of a protected life, liberty, or property interest is a condition precedent to invoking the government's obligation to provide due process of law. See Movers Warehouse Inc. v. City of Little Canada, 71 F.3d 716, 718 (8th Cir. 1995). Thus, we must first determine whether the Stauches possessed a protectible property interest in the renewal of their rental licenses sufficient to trigger federal due process guarantees.

Property interests are not created by the Constitution but rather stem from an independent source such as state law. See id. The property interest claimed by the Stauches derives from the licensing scheme set forth in the Code. See id. at 718 n.3 (municipal ordinance can be a form of state law creating a protected property interest). To establish a property interest in the renewal of a license, the Stauches must show more than a unilateral expectation of it. See id. at 718. They must possess a legitimate claim of entitlement to it. See id. One manner in which state law can create a property

interest is by establishing procedural requirements that impose substantive limitations on the exercise of official discretion. See id. at 719.

The City argues that the Stauches possessed no such property interest because they were not entitled to license renewal under the Code if their units did not pass inspection. The district court, based on the Minnesota Court of Appeals' interpretation of the license renewal requirements, rejected this reading of the Code. It instructed the jury that the Stauches had a protected property interest if: (1) they completed an application form; (2) paid the registration fee; and (3) the property had been inspected within the previous two years. [5]

---

[5]As a threshold matter, the City asserts that the district court improperly applied collateral estoppel by relying on the Minnesota Court of Appeals decision in instructing the jury on this issue. The district court rejected this argument stating in its post-trial order:

> The Court's instruction did not assume any facts found by the jury or construed by the Minnesota Court of Appeals in the Stauch's criminal matter to be proved. Furthermore, the Court did not apply the Minnesota Court of Appeals' legal conclusion that the Stauchs' duplexes were licensed when the City of Columbia Heights posted them. Rather, the Court found the opinion of the Minnesota Court of Appeals to be persuasive authority from a state court regarding an issue of state law interpretation, and applied the precedent established therein.

Addendum to Appellant's Brief at 4. We agree with the district court's assessment of the matter.

We have examined the relevant provisions of the Code, and find no error in the district court's interpretation of the Code's requirements for rental license renewal.[6] Furthermore, we find that the licensing scheme which limits the City's discretion to deny renewal, creates a protected property interest. An applicant seeking renewal of a rental license in Columbia Heights need only meet three objective criteria to qualify. See supra note 4. There is no indication in the Code that upon satisfaction with these criteria, the City may still use its discretion to deny renewal. See, e.g., Movers Warehouse, 71 F.3d at 719 (finding no property interest when ordinance regulating renewal of bingo hall license granted city unfettered discretion to withhold approval of application for license renewal); Littlefield v. City of Afton, 785 F.2d 596, 601 (8th Cir. 1986) (discussing when an applicant's interests in a license which is denied rises to a constitutionally protected interest), overruled on other grounds, Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 n.2 (8th Cir. 1992).

Thus, we find that the Stauches had a protected property interest in the renewal of their rental licenses. Next, we consider whether they were afforded due process in connection with the City's deprivation of that interest. See Zinermon v. Burch, 494

---

[6]We reject the City's assertion that the Stauches had no reasonable expectation of license renewal because the record establishes that they were aware of the City's interpretation of the Code. We also reject the City's claim that the Minnesota district court's decision (overturned by the Minnesota Court of Appeals) shows that the Stauches had no reasonable expectation of license renewal. Finally, we also reject the City's argument that the district court erred in allowing the Stauches to admit only a portion of Chapter 5 of the Code as evidence because it lacked sufficient foundation and was prejudicial. The City contends that the remainder of Chapter 5 indicates that a property had to pass inspection before license renewal. Nothing prevented the City from offering the rest of Chapter 5 itself.

U.S. 113, 125 (1990) ("the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*") (emphasis in original).

An essential principle of due process is that a deprivation of life, liberty, or property  be preceded by notice and opportunity for hearing that is appropriate to the nature of the case.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982) ("To put it as plainly as possible, the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement.").  The right to notice and an opportunity to be heard "'must be granted at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

The Stauches assert that they were denied notice and opportunity for a hearing by the City even though the Code required it.  First, they point to the fact that the Code provides for notice and a public hearing on any proposed license revocation or suspension.  We find the City's actions cannot be characterized as a  "revocation" or "suspension" of the licenses because those terms imply "the withdrawal of an existing entitlement." Mover's Warehouse, 71 F.3d at 719.  Here, the City's actions can better be characterized as a refusal to reissue or extend the life of an existing license rather than a  withdrawal.[7]   Although the Stauches may not have been entitled to the

_____

[7]The Code also distinguishes between revocation/suspension  and renewal, as the provision entitled "Suspension or Revocation" provides in relevant part:

revocation and suspension procedures in the Code, we nonetheless think that the City was required to provide the Stauches with some form of notice and opportunity for a hearing before determining they were no longer licensed.

At trial, the City argued that adequate process was provided in the form of compliance orders which informed the Stauches of building violations detected during inspections and their duty to correct them. According to the City, these compliance orders, as required by the Code, also informed the Stauches of their right to appeal.[8]

---

A license issued or renewed under this section may be revoked or suspended upon a finding of noncompliance with the provisions of this Chapter.

Columbia Heights, Minn., Code of Ordinances, ordinance 1176, ch. 5A, art. IV, § 8, 5A.408(1).

[8]The Code provision dealing with compliance orders provides in relevant part:

Whenever the Building Official determines that any dwelling, dwelling unit or the premises surrounding any of these fails to meet the provisions of this Ordinance, he/she may issue a Compliance Order setting forth the violations of the Ordinance and ordering the owner, occupant, operator or agent to correct such violations. The compliance order shall:

    (a)    Be in writing;
    (b)    Describe the location and nature of the violations of this Code;
    (c)    Establish a reasonable time not greater than six months for the correction of such violation and advise the person to whom the notice is directed of the right to appeal.

Columbia Heights, Minn., Code of Ordinances, ordinance 1176, ch. 5A, art. III, § 3,

Furthermore, the City argues that the Stauches: (1) were orally advised of such a right; (2) were familiar with the appeals process and that, in fact, Leland Stauch had attended the appeals of other landlords; and (3) had met informally with the City Manager, Patrick Hentges, regarding the compliance orders. In short, the City argues that the Stauches knew of their opportunity to appeal the compliance orders but chose not to do so.

The Stauches concede that the Code's procedure for appealing compliance orders provides adequate due process, but they claim the City did not follow the Code in their case. Specifically, the Stauches' argument at trial was that although they knew they could appeal the repairs required by the compliance orders, they were *not* aware nor informed, that failure to appeal the orders would result in a determination that the units were also unlicensed.

Although, the question of whether the procedural safeguards provided for in the Code are adequate to satisfy due process is a question of law for the court to determine, whether the City indeed provided the Stauches with such procedure is a question of fact for the jury. See Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir. 1991). The district court instructed the jury "as a matter of law" that the Stauches were provided an opportunity for a hearing "if the City either notified the plaintiff of the right to a hearing under City ordinance, or the plaintiff actually knew that he or she had the right to such a hearing and the plaintiff nonetheless failed to request a hearing." Trial Transcript, Vol. 12 at 1978. Clearly, the jury chose to credit

5A.303(1).

the Stauches' testimony on this point. In light of the evidence presented at trial, we are unable to find that the facts, viewed in the light most favorable to the Stauches, are susceptible of no reasonable inference supporting the Stauches' position.

Thus, we find the Stauches were deprived of a protected property interest in the renewal of their rental licenses without due process. Having determined that the Stauches suffered a constitutional violation, we next examine whether the City can be held liable for that violation.

### B. The City's Liability

A municipality "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins, 503 U.S. at 122. To impose liability on the City, the Stauches must prove that a municipal custom or policy caused their injury. See Angarita, 981 F.2d at 1546.

The City argues that the Stauches cannot prove that a municipal policy or custom caused their injury. Specifically, it asserts that the Stauches' allegation that city officials failed to follow the procedures set forth in the Code for license renewal is tantamount to saying that the officials acted *contrary* to City policy. We disagree. The City argued at trial and in its brief on appeal that the Stauches could not claim a protected property interest in license renewal because they knew that the City's practice was to require property to pass inspection prior to renewal. See Appellant's Brief at

30. The City cannot simultaneously argue that it required a property to pass inspection prior to license renewal but yet characterize the actions of its officials in implementing this requirement as being "contrary to City policy."

Nor can we accept the City's argument that its actions did not constitute municipal policy because they were based upon advice obtained from a private attorney. Specifically, the City argues that the posting of the Stauches' property came at the recommendation of a private attorney based upon his interpretation of the Code, and that such an individual is not an appropriate policy-maker for purposes of imputing section 1983 liability to the City. We reject the City's attempts to paint the attorney as the responsible party in this situation. The City does not assert that the attorney directed the posting of the Stauches' units or even had the authority to do so but simply that he provided the "legal analysis for the city to make a sound decision." Appellant's Brief at 23. We do not think section 1983 liability can be so easily circumvented.

The City also argues that the district court erred in refusing to instruct the jury that a finding of "reckless disregard" or "deliberate indifference" was required to impose liability on the City for a procedural due process violation. When reviewing a district court's jury instructions, we reverse only for an abuse of discretion. See Thomlison v. City of Omaha, 63 F.3d 786, 790-91 (8th Cir. 1995). "'In considering the failure of a district court to give a requested instruction, the omission is error only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case.'" Id. (quoting Wood v. President & Trustees

-12-

of Spring Hill College, 978 F.2d 1214, 1221 (11th Cir. 1992)).  We have reviewed the jury instructions as well as the cases cited by the City and find no reversible error.

Finally, the City argues the Stauches have no cognizable procedural due process claim because adequate post-deprivation remedies were available under state law.  The existence of state post-deprivation remedies has been deemed to satisfy procedural due process in situations where the alleged constitutional deprivation was caused by random and unauthorized action.  See Hudson v. Palmer, 468 U.S. 517, 532-33 (1984); Zinermon, 494 U.S. at 128-29.  The present action does not fall within that paradigm of cases.  The actions taken by the City were neither random nor unauthorized and it was certainly feasible for the City to have provided the Stauches with an opportunity to appeal the determination that their units were unlicensed.

### III.  CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.